United States District Court
District of Maine

Todd Conant, et al., on behalf of          )
themselves and all others similarly        )
situated,                                   )
                                            )
                    Plaintiffs,             )
              v.                            )          Docket No. 2:19-cv-00296-JDL
                                            )
FMC Corporation,                            )
                                            )
                    Defendant.              )

**Plaintiffs' Consent Motion for Preliminary Review of Proposed Class Settlement
and for Order Preliminarily Certifying Settlement Class, Authorizing
Distribution of Class Notice, Setting Hearing for Final Approval of Settlement,
and Appointing Settlement Class Counsel and Class Representatives**

Plaintiffs respectfully move, under Federal Rule of Civil Procedure 23, that

the Court conduct a preliminary review of their proposed class settlement[1] and

issue an Order preliminarily certifying the Action as a Rule 23(b)(3) class action for

settlement purposes, approving notice of the proposed Settlement to the Settlement

Class Members, setting a hearing date for final approval of the Settlement, and

appointing Plaintiffs' Counsel as class counsel. Defendant consents to this motion.

## I.    Introduction

On November 1, 2017, Defendant FMC sold its Health and Nutrition

Division, including its facility in Rockland, Maine, to DowDuPont. Shortly after the

sale, FMC paid its Rockland-based Health and Nutrition employees for the vacation

---

[1] This Motion incorporates by reference the definitions of the capitalized terms as set forth
in the Settlement Agreement attached as Exhibit 1.

time they had accrued in 2016 (which under FMC policy was considered "earned" as of January 1, 2017), but FMC did not pay its employees for the vacation time they had accrued January 1 through November 1, 2017 (which under FMC policy was considered "earned" as of January 1, 2018).

The Named Plaintiffs filed this Action for unpaid vacation wages and additional remedies on behalf of themselves and about 100 other FMC Health & Nutrition employees based in Rockland, Maine who had "accrued vacation" time for the period January 1, 2017 through October 31, 2017 and who became employed by DowDuPont on or around November 1, 2017. Both parties requested and produced documents and information in informal discovery, and counsel for Plaintiffs propounded written interrogatories, requests for admission, and requests for production of documents from Defendant. The parties conducted a thorough investigation of the relevant legal and factual claims concerning both liability and damages and defenses.

During two separate, full-day Judicial Settlement Conferences with a Judicial Settlement Officer of this Court, Magistrate Judge Nivison, the parties negotiated at arm's length and achieved this Court-supervised Settlement of the putative class action claims for unpaid wages brought by the Named Plaintiffs.

The proposed Settlement, in the amount of $695,000 plus up to $25,000 for costs of administration, falls well within the range of likely outcomes at trial. This Settlement represents about 175% of the total claimed unpaid wages for the class (about $415,000), and represents nearly 60% of the maximum recoverable damages

at trial (the claimed unpaid damages plus liquidated damages equal to twice that amount). See Exhibit 1 (Settlement Agreement), Attachment A. Considering the unavoidable delays, burdens, costs, and risks of proceeding through discovery and trial—which included a possible contested motion to remand, motion for class certification, and cross-motions for summary judgment raising complex issues concerning the interpretation of FMC's vacation pay policies and of Maine's unpaid vacation wage statute, 26 M.R.S. § 626—the Settlement represents a fair and mutually beneficial resolution of a complex case. Although the parties believe in the merits of their respective claims and defenses, they also recognize they would face substantial challenges regarding matters of proof involving liability and damages. Given that this litigation raises multiple complex issues under Maine law, the parties and their counsel recognize that any outcome in court would likely have been appealed, putting them at further risk and further delaying resolution. Thus, the parties have concluded the Settlement is fair and reasonable and is in the parties' best interests.

## II.  Summary of Settlement

Under the Settlement Agreement, attached as Exhibit 1, Defendant will pay into a Qualified Settlement Fund[2] the amount of $695,000, plus up to $25,000 to

---

[2] Under the Settlement Agreement, the parties agreed that "The parties stipulate and agree that this Qualified Settlement Fund (1) will be established by order of and approved by the Court and will be subject to the continuing jurisdiction of the Court; (2) is established to resolve contested claims that have resulted from an event that has occurred and that has given rise to claims asserting liability arising out of an alleged violation of law; (3) is a trust under applicable state law and its assets will be otherwise segregated from other assets of the Defendant and related persons; and (4) qualifies as and will be treated as a qualified

cover the costs of administration of the class settlement (including any employer's share of payroll taxes that the Settlement Administrator determines is required). The Qualified Settlement Fund will be administered by Rust Consulting, and the Settlement Administrator will estimate the wage-related taxes, distribute notice to Settlement Class Members, and otherwise administer the Settlement, including receiving and reporting on any opt-out or objection notices.

Plaintiffs' Counsel will apply to the Court for an order approving payment of their fees for prosecuting the Action in the amount of 33 1/3% of $695,000, as well as costs and expenses incurred or reasonably expected to be incurred by Plaintiffs' Counsel on behalf of the Settlement Class. Plaintiffs' Counsel will also apply to the Court for an order approving Service Awards payable to the five Named Plaintiffs of $4,000 each (for an aggregate award of $20,000), which will likewise be paid from the Qualified Settlement Fund.

With allowances for these payments, the Qualified Settlement Fund will be allocated to each of the Settlement Class Members on a pro rata basis, based on the "accrued vacation" each Settlement Class Member had for the period of January 1,

settlement fund for federal tax purposes in compliance with Internal Revenue Code Section 468B and 26 C.F.R. (Treas. Regs.) §§ 1.468B-1 to 1.468B-5." Exhibit 1, ¶ 11. The parties further agreed that "Class Counsel may elect to have all, part, or none of its attorneys' fees award paid in periodic payments through a structured settlement arrangement entered into before payment of such fees to Class Counsel. All fees awarded to Class Counsel to be so structured will be paid by the Settlement Administrator, out of the Settlement Fund to an assignment company(ies) in accord with appropriate assignment and release agreements ("Assignment Agreements"). Class Counsel has no present right to payment of any structured fees that are the subject of Assignment Agreements. The Settlement Administrator will have the authority to execute documents and take such actions as may be necessary to effectuate the assignment and payment of fees under any Assignment Agreement. Exhibit 1, ¶ 32.

2017 through October 31, 2017, according to FMC's records. See Exhibit 1, Attachment A. As set forth in the Settlement Agreement, any such amounts will be recalculated and increased as necessary to account for Settlement Class Members who, despite the Settlement Administrator's due diligence, cannot be located, or who do not timely negotiate any checks submitted to Settlement Class Members. Settlement Class Members will be given 45 days to opt-out or object to the Settlement by means specified in the Notice, or 15 days from any follow-up mailing if the original Notice is returned as undeliverable, whichever is later. See Exhibit 1, Attachment B (Proposed Notice of Settlement). If five percent (5%) or more of the Settlement Class Members opt out of the Settlement, Defendant will have the right to rescind the Settlement and the Settlement Agreement, which upon such rescission will be deemed null and void.

## III.   Argument

### A.   The Court Should Preliminarily Approve the Settlement and Direct Notice of the Proposed Settlement to the Class.

Federal Rule of Civil Procedure 23(e) provides the following framework for the approval required before a class action settles: (1) the court must direct notice in a reasonable manner to all class members who would be bound by the proposed settlement; (2) the court may approve a settlement that would bind class members only after a hearing and finding that it is "fair, reasonable, and adequate;" (3) the parties seeking approval must file a statement identifying any agreement made in connection with the proposal; (4) if the class action was previously certified under Rule 23(b)(3), the court may refuse approval of a proposed settlement unless it

affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to opt out but did not do so; and (5) any class member may object to the proposed settlement if it requires approval under Rule 23(e) and such objection may be withdrawn only with the court's approval. Fed. R. Civ. P. 23(e).

"Court approval of a Rule 23 class action settlement generally proceeds in two stages." *Michaud v. Monro Muffler Brake, Inc.*, 2:12-cv-00353-NT, 2015 U.S. Dist. LEXIS 32526, at *23-24, 2015 WL 1206490, at *8 (D. Me. March 17, 2015) (citing *Manual for Complex Litigation* (Fourth) § 21.632 (2011)). <u>First</u>, "counsel submits the terms of the proposed settlement, and the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and directs notice to class members on the certification, proposed settlement, and date of the final fairness hearing." *Id.* (internal punctuation and citation omitted). The court should be guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "Generally, courts have recognized a presumption of fairness for settlements that are deemed to be the result of arm's-length negotiations following meaningful or sufficient discovery." *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 44-45 (D. Me. 2005) (internal quotations omitted); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009); *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009).

"At this initial stage, the court's role is limited to deciding whether the proposed settlement appears to fall within the range of possible final approval." *Michaud*, 2015 WL 1206490 at \*8 (internal punctuation and citation omitted). If the Court finds the settlement meets that standard, it approves notice of the proposed settlement to the class members. *Id.* at \*9. Notice must be "reasonably calculated to reach the class members and inform them of the existence of and the opportunity to object to the settlement." *Id.* at \*10 (quoting *Nilsen v. York Cnty.*, 382 F. Supp. 2d 206, 210 (D. Me. 2005)).

Second, following notice to the class, "the court holds a fairness hearing where the settlement proponents must demonstrate that the proposed settlement is fair, reasonable, and adequate." *Michaud*, 2015 WL 1206490, at \*8 (internal punctuation and citation omitted). "Typically, a court's final approval of a class action settlement involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Id.* (internal punctuation and citation omitted). "The following factors are relevant for a court evaluating whether to approve a Rule 23 settlement: (1) comparison of the proposed settlement with the likely result of litigation; (2) stage of the litigation and the amount of discovery completed; (3) reaction of the class to the settlement; (4) quality of counsel; (5) conduct of the negotiations; (6) prospects of the case, including risk, complexity, expense and duration." *Id.* (internal quotation omitted).[3] At the final

---

[3] Similarly, Federal Rule of Civil Procedure 23(e)(2) lists the following factors for a court ordering final approval a Rule 23 settlement:

approval hearing, Settlement Class Members who have objected to the Settlement will have an opportunity to be heard. After considering any such objections, and the arguments and evidence submitted by proponents of the Settlement, the Court may consider the matter and determine whether to grant final approval.

The Court should direct notice of the proposed settlement to the Settlement Class Members because the proposed settlement falls well "within the range of possible final approval," the primary focus of the Court's inquiry at this initial phase. *Michaud*, 2015 WL 1206490 at *8. The proposed Settlement represents about 175% of the total claimed unpaid wages for the class (about $415,000), and represents nearly 60% of the maximum recoverable damages at trial (the claimed unpaid damages plus liquidated damages equal to twice that amount). See Exhibit 1, Attachment A. The Settlement was negotiated at arm's length by qualified counsel, with the able assistance and supervision of a Judicial Settlement Officer of this Court, Magistrate Judge Nivison, over two separate full-day Judicial Settlement Conference sessions. The parties engaged in thorough investigation of the legal claims, defenses, and damages at issue. Both parties requested and produced documents and information in informal discovery, and counsel for Plaintiffs propounded written interrogatories, requests for admission, and requests

---

"(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other."

for production of documents from Defendant. Finally, the costs and risks of proceeding with litigation are considerable and likely include a contested motion to remand, motion for class certification, cross-motions for summary judgment raising complex issues concerning the statutory interpretation of Maine wage law in the context of a business sale, and an appeal.

In sum, the Settlement is undeniably "fair, reasonable, and adequate" and appropriately reflects the risks and costs of further litigation. *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.").

### B.   The Action Should Be Certified under Rule 23 for Settlement Purposes.

An action can be settled as a class action that binds absent class members only if it is first certified as a class action under Rule 23. *See* Fed. R. Civ. P. 23. Certification of an action requires that it meet the requirements of Rule 23(a) and one of the types of class actions described in Rule 23(b) for settlement purposes. *Id.*; *Michaud*, 2015 WL 1206490 at *2. This Action satisfies the requirements of Rule 23(a) and 23(b)(3) such that it may be certified for settlement purposes.[4]

The five Named Plaintiffs seek to represent a class of all individuals who (1) were employed within FMC's Health & Nutrition division and based at the seaweed

---

[4] For the sole purpose of facilitating settlement, Defendant does not contest the Named Plaintiffs' arguments for class certification, and if the Settlement is not, for any reason, finalized, Defendant reserves the right to contest the class certification.

processing plant in Rockland, Maine, as of October 31, 2017, (2) had any "accrued vacation" in 2017 according to FMC's records, and (3) became employed by DowDuPont on or around November 1, 2017, pursuant to a Transaction Agreement dated March 31, 2017, between E.I. du Pont de Nemours & Company and FMC Corporation. The proposed class meets all of the applicable requirements for certification under Fed. R. Civ. P. Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

First, the proposed class consists of 107 employees, which well exceeds the "low bar" for establishing numerosity required by Fed. R. Civ. P. 23(a)(1). *Mooney v. Domino's Pizza*, No. 1:14-cv-13723-IT, 2016 U.S. Dist. LEXIS 118193, *4 (D. Mass. Sept. 1, 2016); *see also Hunnewell v. SHW Properties, LLC*, Docket No. BCD-CV-16-28 (Me. Bus. & Cons. Ct. Mar. 15, 2017) (order of Justice Michaela Murphy certifying class under Fed. R. Civ. P. 23 where parties estimated there were about 30 members in the class). Courts in the First Circuit "have generally found that a class of 40 or more individuals satisfies numerosity." *Venegas v. Global Aircraft Servs.* 159 F. Supp. 3d 93, 98 (D. Me. 2016) (citation and quotation marks omitted).

Second, Plaintiffs easily satisfy the "low bar" for showing Rule 23(a)(2) "commonality." *Applegate v. Formed Fiber Techs., LLC*, No. 2:10-cv-00474-GZS, 2012 U.S. Dist. LEXIS 105264, *16 (D. Me. July 27, 2012); *see generally Wal-Mart*

*Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). The plaintiffs must show merely that there is "at least one common contention capable of class-wide resolution." *Venegas*, 159 F. Supp. 3d at 98. Here, Plaintiffs have raised a fundamental contention capable of class-wide resolution: that FMC's failure to pay vacation wages accrued for the January 1 – October 31, 2017 time period upon the sale of the Health & Nutrition business to DowDuPont violated Maine wage law, 26 M.R.S. § 626.

Third, Named Plaintiffs meet the lenient typicality requirement in Rule 23(a)(3) by showing that their alleged injuries—the nonpayment of vacation wages upon their separation from employment with FMC on October 31, 2017—"arise from the same events or course of conduct as do the injuries of the class" and that their claims "and those of the class are based on the same legal theory." *Venegas*, 159 F. Supp. 3d at 99. Typicality, like commonality, "does not require that all putative class members share identical claims." *Garcia v. E.J. Amusements of N.H., Inc.,* 98 F. Supp. 3d 277, 288 (D. Mass. 2015). Moreover, typicality must "be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Applegate*, 2012 U.S. Dist. LEXIS 105264, *19.

And fourth, Plaintiffs satisfy the Rule 23(a)(4) requirement that the representative party will "fairly and adequately protect the interests of the class." Only conflicts of interest "that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Garcia v. E.J. Amusements of N.H., Inc.,* 98 F. Supp. 3d 277, 288 (D.

Mass. 2015). While the typicality element substantially overlaps with the commonality requirement, commonality focuses on "the relationship of class members generally," whereas typicality focuses on "the relationship between the proposed class representative and the rest of the class." *Barry v. Moran,* No. 05-10528, 2008 U.S. Dist. LEXIS 112404, 2008 WL 7526753, at *11 (D. Mass. Apr. 7, 2008). The Named Plaintiffs share the core interests of the proposed class because they were all FMC Health & Nutrition employees based in Rockland, Maine who had "accrued vacation" in 2017 and were not paid the value of that "accrued vacation" when they became employed by DowDuPont on or around November 1, 2017. The Named Plaintiffs have no fundamental conflicts of interests with the proposed class that would prevent them from vigorously pursuing the interests of the class.

Finally, Plaintiffs meet the requirement of Rule 23(b)(3) to show that questions common to the class predominate over idiosyncratic questions and that a class action is the superior method of adjudication. All of the important factual and legal issues in this Action are common to the entire class and are susceptible to common proof, including: (1) whether the "terms of employment or the [Defendant's] established practice" included provisions for pay of Plaintiffs' 2017 accrued vacation time upon sale of the business within the meaning of Maine wage law, 26 M.R.S. § 626; and (2) whether Defendant alternatively complied with Maine wage law "through a specific agreement with the buyer," DowDuPont, "in which the buyer agrees to pay any wages earned by employees through employment with [FMC] and

to honor any paid vacation earned under [FMC's] vacation policy," 26 M.R.S. § 626. Although individual damage awards could vary due to, among other things, the precise amount of vacation wages owed, it is black letter law that a need for individualized damages determinations does not defeat class certification. *See Michaud*, 2015 WL 1206490 at \*4.

Plaintiffs likewise easily meet Rule 23(b)(3)'s requirement in that a class action is superior to the alternative of 107 separate individual actions, considering: (A) the class members' interests in individually controlling the prosecution of separate actions; (B) the extent of "any litigation concerning the controversy already begun by . . . class members"; [and] (C) the "desirability . . . of concentrating the litigation in the particular forum." Fed. R. Civ. P. 23(b)(3)(A)-(C).[5] The class members do not have any interest in individual control of prosecuting separate actions; class members have not instituted any other related actions; and it makes sense to have Plaintiffs' claims adjudicated together in Maine. *Scovil v. FedEx Ground Package Sys.*, 886 F. Supp. 2d 45, 56 (D. Me. 2012).

### C.   The Proposed Notice of Settlement Should Be Approved.

Rule 23(c) requires that the "best notice that is practicable under the circumstances" must be sent to the Settlement Class Members. Fed. R. Civ. P. 23(c)(2)(B). The notice must inform the proposed class members of the following: the

---

[5] For purposes of a certification of a settlement class, the Court need not consider the Rule 23(b)(3)(D) factor of the likely difficulties in managing a class action because there are no trial management issues to consider. *Curtis v. Scholarship Storage*, No. 2:14-cv-303-NT, 2016 U.S. Dist. LEXIS 9001 at \* 8 n.1 (D. Me. January 25, 2016) (citation omitted).

nature of the action; the definition of the certified class; the class's claims, issues or defenses; that class members may enter an appearance through an attorney; that the Court will exclude any member who opts out; the time and manner for requesting exclusion; and the binding effect of a class-wide judgment. Fed. R. Civ. P. 23(c)(2)(B). Any such notice must be "reasonably calculated to reach the class members and inform them of the existence of and the opportunity to object to the settlement." *Michaud*, 2015 WL 1206490 at *10 (internal punctuation and citation omitted).

The proposed Notice of Settlement (Exhibit 1, Attachment B), accomplishes all of these requirements. In particular, it defines the Settlement Class; clearly describes the options available to Settlement Class Members (*i.e.*, to object, participate, or opt out) and the deadlines for taking any related actions; describes the claims; describes the material terms of the Settlement; discloses any benefits provided to the class representatives (*i.e.*, Service Awards); provides information about Plaintiffs' counsel and the requested attorneys' fees; indicates the time and place of the hearing to consider final approval of the Settlement; explains the procedures for allocating and distributing the Qualified Settlement fund; estimates each Settlement Class Member's allocation of the Qualified Settlement Fund; displays the Settlement Administrator's contact information; and explains how to make inquiries about the Settlement.

Because the proposed Notice of Settlement meets the articulated legal standard, it should be approved for distribution to the Settlement Class.

**D.** **Named Plaintiffs' Counsel Should Be Appointed Class Counsel and the Named Plaintiffs Should Be Appointed as Class Representatives.**

Federal Rule of Civil Procedure 23(g)(2)(4) directs the Court to appoint counsel who will "fairly and adequately represent the interest of the class." Plaintiffs' counsel easily meet the requirements to be appointed as class counsel. In addition, the Court should appoint the Named Plaintiffs—Todd Conant, Karen Migliore, Gregory Gould, Thomas Ames, and Rodney Mason—as class representatives.

When appointing class counsel, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id.* The court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.*

Named Plaintiffs' counsel David Webbert and Carol Garvan are experienced in class litigation, have committed substantial time and resources to this Action, and should be appointed as class counsel for purposes of the Settlement. *See* Plaintiffs' counsel's declarations submitted in support of their motion for class certification in *O'Connor v. Oakhurst Dairy*, 2:14-00192-NT (Amended Declaration of Carol J. Garvan, Case 2:14-cv-00192, ECF #167, attached as Exhibit 2; Amended Declaration of David G. Webbert, Case 2:14-cv-0192-NT, ECF #168, attached as

15

Exhibit 3). As this Court stated recently in appointing Plaintiffs' counsel as Class

Counsel in class action for unpaid wages,

> Class Counsel [has] represented the Class Members interests zealously and
> achieved an excellent result for the class. . . . Attorneys Young, Webbert, and
> Garvan have represented plaintiffs in many of class and collective action
> lawsuits. . . . [A]ttorney Webbert has been specializing in prosecuting
> complex civil rights cases for over 30 years; attorney Garvan has been
> specializing in prosecuting complex employment and civil rights cases for
> over 7 years and has been named as a "Rising Star" by New England Super
> Lawyers for the past three years.

*O'Connor v. Oakhurst Dairy*, Docket No. 2:14-00192-NT, 2018 U.S. Dist. LEXIS

102244 (D. Me. June 19, 2018).

### E.    A Final Fairness Hearing Should Be Scheduled.

The parties respectfully ask the Court to schedule a Final Fairness Hearing

for 90 days from the date of the order directing notice to the Settlement Class

Members, or as soon thereafter as practicable.

## IV.    Conclusion

For all of these reasons, Plaintiffs respectfully ask the Court to certify the

Named Plaintiffs' claims as a class action for settlement purposes, direct Notice of

the proposed Settlement to the Settlement Class Members, and grant the further

relief as requested and as set forth in the attached proposed Order.

Date:  February 14, 2020      Respectfully submitted,

                               /s/ Carol J. Garvan
                               Carol J. Garvan
                               David G. Webbert
                               Johnson, Webbert & Young, LLP
                               160 Capitol St., Suite 3
                               P.O. Box 79
                               Augusta, ME 04332-0079
                               Telephone:  (207) 623-5110
                               Email:  cgarvan@work.law
                               Email:  dwebbert@work.law
                               *Attorneys for Plaintiffs*

## Certificate of Service

I hereby certify that on February 14, 2020 I electronically filed this document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Carol J. Garvan
Carol J. Garvan