United States District Court
District of Maine

| | | |
|---|---|---|
| Todd Conant, et al., on behalf of themselves and all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Docket No. 2:19-cv-00296-JDL |
| FMC Corporation, | ) | |
| Defendant. | ) | |

**Plaintiffs' Consent Motion for Final Approval of Class Settlement**

Plaintiffs Todd Conant, Thomas Ames, Gregory Gould, Rodney Mason, and Karen Migliore, on behalf of themselves and all other similarly situated workers, respectfully move, under Fed. R. Civ. P. 23, for an order issued on or after September 1, 2020, (1) certifying the class for purposes of judgment on the proposed settlement; (2) granting final approval of the proposed settlement; (3) dismissing the action with prejudice; (4) declaring all Class Members who are not Opt-Outs to be bound by the release of claims described in the Settlement Agreement and Release (ECF No. 22-1); and (5) retaining jurisdiction over the construction, interpretation, implementation, and enforcement of the Settlement Agreement and Release, including

administration and distribution of payments.[1] Defendant consents to this motion.

## I. Case History

The Named Plaintiffs filed this Action for unpaid vacation wages on behalf of themselves and 102 other FMC Health & Nutrition employees based in Rockland, Maine who had "accrued vacation" time for the period January 1, 2017 through October 31, 2017. Named Plaintiffs and Class Counsel conducted a thorough and diligent investigation of the relevant legal and factual claims concerning both liability and damages, including retaining an expert to analyze the vacation pay owed to each class member, requesting and producing documents and information in informal discovery, and propounding written interrogatories, requests for admission, and requests for production of documents.

The proposed settlement was hammered out during two separate, full-day Judicial Settlement Conferences with a Judicial Settlement Officer of this Court, Magistrate Judge Nivison. The parties and their lawyers negotiated vigorously and at arm's length and ultimately achieved this Court-supervised, proposed settlement of the putative class action claims for unpaid wages.

---

[1] This Motion incorporates by reference the definitions of the capitalized terms as set forth in the Settlement Agreement (ECF No. 22-1).

On February 14, 2020, Plaintiffs filed their Consent Motion for Preliminary Review of Proposed Class Settlement and for Order Preliminarily Certifying Settlement Class, Authorizing Distribution of Class Notice, Setting Hearing for Final Approval of Settlement, and Appointing Settlement Class Counsel and Class Representatives (ECF No. 22).

On May 5, 2020, the Court issued its Order Accepting the Recommended Decision of the Magistrate Judge (ECF No. 32). This Order granted Plaintiffs' motion in all respects. The Order also directed that a Final Approval Hearing be held 90 days after the date of the Order. By Notice dated June 1, 2020 (ECF No. 34), the Court scheduled the Final Approval Hearing for August 12, 2020, at 2:00 p.m.

The proposed $695,000 Settlement represents a fair, reasonable, and adequate resolution of a case that could have ended with no payment at all to the class members if complex questions concerning the interpretation of FMC's vacation pay policies and of Maine's unpaid vacation wage statute, 26 M.R.S. § 626, had been resolved in FMC's favor.

The $695,000 settlement paid into the Qualified Settlement Fund[2] will result in payments to each of the 107 class members for **over 100%** of their

---

[2] Under the Settlement Agreement, the parties agreed that "The parties stipulate and agree that this Qualified Settlement Fund (1) will be established by order of and approved by the Court and will be subject to the continuing jurisdiction of the Court; (2) is established to resolve contested claims that have resulted from an event that has occurred and that has given rise to claims asserting liability arising out of an alleged violation of law; (3) is a trust

alleged unpaid vacation pay. This unusually high recovery is the net recovery after deduction of the proposed attorneys' fees, expenses, service awards, and costs of settlement administration. On average, class members will receive about $4,000.00. *See* Declaration of Carol Garvan (Garvan Decl.) ¶ 8 (attached to Plaintiffs' Unopposed Motion for Approval of Attorney's Fees and Reimbursement of Case Expenses). The $695,000 Settlement represents about 175% of the total claimed unpaid wages for the class (about $415,000), and represents nearly 60% of the **maximum** possible recoverable damages at trial (the $415,000 in claimed unpaid damages plus liquidated damages equal to twice that amount). Garvan Decl. ¶ 8.

If the case had not been resolved, the parties faced the significant risks and costs of further litigation, including a possible contested motion to remand, additional written and oral discovery, class certification motion

---

under applicable state law and its assets will be otherwise segregated from other assets of the Defendant and related persons; and (4) qualifies as and will be treated as a qualified settlement fund for federal tax purposes in compliance with Internal Revenue Code Section 468B and 26 C.F.R. (Treas. Regs.) §§ 1.468B-1 to 1.468B-5." ECF No. 22-1, ¶ 11. The parties further agreed that "Class Counsel may elect to have all, part, or none of its attorneys' fees award paid in periodic payments through a structured settlement arrangement entered into before payment of such fees to Class Counsel. All fees awarded to Class Counsel to be so structured will be paid by the Settlement Administrator, out of the Settlement Fund to an assignment company(ies) in accord with appropriate assignment and release agreements ("Assignment Agreements"). Class Counsel has no present right to payment of any structured fees that are the subject of Assignment Agreements. The Settlement Administrator will have the authority to execute documents and take such actions as may be necessary to effectuate the assignment and payment of fees under any Assignment Agreement." ECF No. 22-1, ¶ 32.

practice, summary judgment proceedings raising complex issues of state law, and likely appeals. Although the parties believe in the merits of their respective claims and defenses, they also recognize they would face substantial challenges and risks proceeding with this Action. Furthermore, the parties and their counsel recognize that any outcome could be appealed, further risking or otherwise delaying any successful resolution. Therefore, the parties have concluded the Settlement is fair, reasonable and in the parties' best interests.

The 100% favorable reaction of the Class to the proposed settlement strongly supports judicial approval. In accord with the Court's Order authorizing notice to the class (ECF Nos. 27, 32), notice of the Settlement was sent to all 107 putative Class Members on May 8, 2020. To date, all Notice Packets have been successfully delivered, and not a single objection or opt-out request has been received. *See* Declaration of Jennifer Mills, Rust Consulting, Inc. ("Mills Decl."), ¶¶ 9-15.

## II. Argument

### A. The Proposed Settlement Warrants an Order of Final Approval on or After September 1, 2020.

A class action may be settled and dismissed only with the court's approval. Fed. R. Civ. P. 23(e). The court may approve a class action settlement "only after hearing and on finding that it is fair, reasonable, and

adequate." *Id.* 23(e)(2); *Michaud v. Monro Muffler Brake, Inc.*, No. 2:12-CV-00353-NT, 2015 WL 1206490, at *8 (D. Me. Mar. 17, 2015) at *8 (internal punctuation and citation omitted).

Under the Class Action Fairness Act, an order granting final approval of a proposed settlement of a class action "may not be issued earlier than 90 days after" the defendant serves required CAFA notices on the appropriate government officials. 28 U.S.C. §1715(d). Those CAFA notices were served to the appropriate government officials on June 3, 2020. Mills Decl., ¶ 16. So the order granting final approval may be issued on or after September 1, 2020.

"Generally, courts have recognized a presumption of fairness for settlements that are deemed to be the result of arm's length negotiations following meaningful or sufficient discovery." *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 44-45 (D. Me. 2005); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009); *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009). Similarly, "[w]hen the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000). The court should be guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is

the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "Typically, a court's final approval of a class action settlement involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Michaud,* 2015 WL 1206490, at *8.

This Court has already approved notice of the proposed settlement to the class based on its finding that the parties made a sufficient "showing that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). The Court's determination of likely final approval (ECF Nos. 27, 32) has now been bolstered by the completely favorable response of the class to the notice of the proposed settlement, with no objections.[3]

The following factors are relevant for determining whether a proposed class action settlement is fair, reasonable, and adequate: (1) comparison of the proposed settlement with the likely result of litigation; (2) stage of the litigation and the amount of discovery completed; (3) reaction of the class to the settlement; (4) quality of counsel; (5) conduct of the negotiations; and (6)

[3] *See also id.* 2018 advisory committee note ("The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object.").

prospects of the case, including risk, complexity, expense, and duration.[4] *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-cv-515-DBH, 2014 WL 1057079, at *2 (D. Me. Mar. 14, 2014; *accord*: *Curtis v. Scholarship Storage Inc.*, 2:14-cv-303-NT, 2016 U.S. Dist. LEXIS 70410, at *3 (D. Me. May 31, 2016); *Michaud*, 2015 WL 1206490, at *8.

All the relevant factors favor final approval of the proposed settlement. **First**, the proposed relief for the class members is more than adequate, particularly given the unpredictable results and delays of litigation. The proposed $695,000 Settlement represents about 175% of the total claimed unpaid wages for the class (about $415,000), and represents nearly 60% of the maximum recoverable damages at trial (the claimed unpaid damages plus liquidated damages equal to twice that amount). Even after proposed attorneys' fees, expenses, service awards, and costs of settlement administration are deducted from the Qualified Settlement Fund, each class

---

[4] Similarly, Fed. R. Civ. P. was amended in 2018 to list the following factors for a court ordering final approval of a Rule 23 settlement, which mirror the factors identified as relevant in *Scovil*:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

member will receive over 100% of their full claim for unpaid vacation pay. Garvan Decl, ¶ 8. This proposed payout of over 100% is particularly good given that multiple difficult questions of law remained to be decided, including class certification, summary judgment issues raising complex and novel questions on the interpretation of FMC's vacation policy and the statutory interpretation of unpaid vacation wage statute in the context of a business sale, and likely appeals. If the settlement is approved, the Settlement Fund will be apportioned equitably among the class members: each of the 107 class members will receive a pro rata basis based on their full accrued vacation pay for the period of January 1 – October 31, 2017. The class members will receive, on average, about $4,000.00 each. Garvan Decl, ¶ 8.

**Second**, before the proposed settlement was reached, Class Counsel engaged in a thorough and diligent investigation of the legal claims, defenses, and damages at issue. Before undertaking efforts to resolve the case through settlement, both parties requested and produced documents and information in informal discovery. And counsel for Plaintiffs retained an expert witness to analyze each class member's unpaid vacation wages for the period in question, and propounded detailed and tailored written interrogatories, requests for admission, and requests for production of documents upon Defendant.

**Third**, the class's reaction to the Settlement has been entirely positive and notice of the proposed Settlement to the class has been 100% effective. On May 8, 2020, the Settlement Administrator sent notice of the proposed settlement to 107 class members; only one notice was returned as undeliverable. The Administrator then sent a new notice to that one class member at an updated address. The notice sent to all class members specified a 45-day deadline for any objection or request to opt out of the settlement. As of today, notices have been mailed to all 107 class members with no notices returned as undeliverable, no objections have been filed, and no class member has opted out of the settlement. Miller Decl., ¶¶ 9-15. So, settlement payments are on track to be distributed to all 107 class members.

**Fourth**, counsel for both sides are highly experienced and have demonstrated zealous dedication to their clients' causes. Class counsel, David Webbert and Carol Garvan, are highly experienced in class litigation and have devoted substantial time and resources to this Action. *See* ECF 22-4 (Amended Declaration of Carol J. Garvan); ECF 22-5 (Amended Declaration of David G. Webbert). As Judge Nivison stated in his Recommended Decision on Plaintiffs' motion for preliminary certification, notice, and appointment of class counsel in this case,

> [P]roposed counsel have extensive class action experience and have successfully represented plaintiffs in class actions in this Court for many years. In addition, in this and other cases, counsel have

> consistently demonstrated that they are highly skilled and knowledgeable practitioners. In short, the record reflects that to this point counsel have fairly and adequately represented the class and counsel's past performance suggests that they will do so until the conclusion of this matter.

ECF No. 27; *see also O'Connor v. Oakhurst Dairy*, Docket No. 2:14-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018). As discussed in detailed in Plaintiffs' motion for attorneys' fees and expenses, the one-third fee sought by Class Counsel is reasonable and fair, particularly given the excellent results achieved for the class, the skill, time, and effort required by Class Counsel to reach this successful conclusion, and the precedents of this District approving a one-third fee in similar class action settlements.

Moreover, the five named class representatives have ably represented the class over the past year-and-a-half, maintaining close contact with Class Counsel, responding to requests for information and documents, and preparing for and attending multiple day-long judicial settlement conferences.

**Fifth**, the record confirms vigorous and arms' length settlement negotiations under close judicial scrutiny. During a full day of mediation on October 2, 2020, the parties negotiated with the assistance and supervision of a Judicial Settlement Officer of this Court, Magistrate Judge Nivison. A resolution was not reached, and the parties' negotiations continued for the next month and a half with further assistance of Magistrate Judge Nivison.

The parties then participated in a second full-day mediation on November 15, 2020, when a proposed settlement was finally reached.

**Sixth** and finally, the proposed settlement properly accounts for the risks, costs, complexity, and likely duration of continued litigation. The case hinged on unsettled issues of law concerning Maine's unpaid wage statute, 26 M.R.S. § 626, which had not yet been determined by the Court and posed substantial uncertainty and risks for both sides. Continued litigation would have required massive additional time and expense for each side—likely including additional written and oral discovery on liability and damages, a disputed motion for remand, a disputed motion for class certification, cross-motions for summary judgment on the statutory interpretation of Maine wage law in the context of a business sale, and trial—with no guarantee of success. And if the matter had proceeded to trial, the non-prevailing party would likely have appealed the statutory interpretation issues, further delaying receipt of any money by the class members.

In short, the proposed Settlement is fair, reasonable, and adequate, is the product of arms'-length negotiations supervised by a Judicial Settlement Officer of this Court, and appropriately reflects the risks and costs of further litigation.

### B. For Settlement Purposes, The Action Should Be Finally Certified Under Rule 23.

This Court has already preliminarily certified the settlement class and approved notice of the proposed settlement to that class (ECF No. 32), based on its finding that the parties had made a sufficient "showing that the court will likely be able to . . . certify the class for purposes of judgment on the proposal," Fed. R. Civ. P. 23(e)(1)(B)(ii). The Court's determination that it will likely be able to certify the proposed class has now been further supported by the absence of any objections in response to the notice to the proposed class.

An action can be settled as a class action that binds absent class members only if the Court certifies "the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). Certification of an action requires that it meet the requirements of Rule 23(a) and one of the types of class actions described in Rule 23(b) for settlement purposes. *Id.*; *Michaud v. Monro Muffler Brake, Inc.*, No. 2:12-CV-00353-NT, 2015 WL 1206490 (D. Me. Mar. 17, 2015) at *2. This Action satisfies the requirements of Rule 23 such that it may be certified for settlement purposes.[5]

[5] For the sole purpose of facilitating settlement, Defendant does not contest the Named Plaintiffs' arguments for class certification, and, if the Settlement is not, for any reason, completed, Defendant reserves the right to contest the certification.

Plaintiffs seek certification of a settlement class of all individuals who (1) were employed within Defendant's Health & Nutrition division at the seaweed processing plant in Rockland, Maine, as of October 31, 2017, (2) had any "accrued vacation" in 2017 according to Defendant's records, and (3) became employed by DowDuPont on or around November 1, 2017, pursuant to a Transaction Agreement dated March 31, 2017, between Defendant and E.I. du Pont de Nemours & Company.

As further detailed in Plaintiffs' Consent Motion for Preliminary Review, which the Court granted in full (ECF No. 32), the proposed class meets all of the applicable requirements for class certification under Fed. R. Civ. P. Rule 23(a) and 23(b)(3). *See* ECF No. 22, pp. 9-13. Under Rule 23(a), (1) the class of 107 former employees is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class, given that each class member would have the same substantive claim for vacation wages for the period January 1, 2017 through October 31, 2017; (3) for the same reason, the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class, as the interests of the five named Plaintiffs to recover unpaid vacation wages are aligned with the interests of the putative class members. Fed. R. Civ. P. 23(a); *see* ECF No. 22, pp. 9-12.

Class certification is also appropriate under Rule 23(b)(3). The legal claims and defenses at the core of this case, concerning whether FMC is required to pay vacation wages accrued in 2017 under Maine's wage law, 26 M.R.S. § 626, are common to the class and predominate over any individualized issues. And class action is the superior method of adjudication of this dispute, particularly given the relatively small potential recovery for any individual class member and the lack of any other pending claims by class members. Fed. R. Civ. P. 23(b)(3); *see* ECF No. 22, pp. 12-13.

### C. The Action Should Be Dismissed on the Merits and With Prejudice.

The Settlement Agreement is intended to end litigation of the Action. The parties request, under the Settlement Agreement, that the final approval order dismiss the Action with prejudice. Based on the terms of the Settlement Agreement, the parties also request that the Court's final approval order declare that, because the Action has been certified as a class action under Federal Rule of Civil Procedure 23, all Class Members who did not actively opt-out of the Settlement will be bound by the dismissal with prejudice, and by the release of claims described in the Settlement Agreement.

### D. The Court Should Approve the Proposed Service Awards for the Five Named Plaintiffs.

"Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit." *Scovil,* 2014 WL 1057079, at *6. In class action employment cases, "awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher." *Id.* (summarizing cases and judicial reasoning); *see also Bozak v. FedEx Ground Package Sys.*, 3:11-cv-00738-RNC, 2014 U.S. Dist. LEXIS 106042, at **11-16 (D. Conn. July 31, 2014) (reviewing service award analysis in class action cases).

Class Counsel has proposed, and Defendants do not object to, Service Awards of $4,000 each to the five Named Plaintiffs. Class Counsel proposes these amounts because all Named Plaintiffs (1) played a significant role in facilitating settlement, including agreeing to serve as Named Plaintiffs and class representatives on a public court complaint, which involves significant risk of public scrutiny and criticism and imposes significant time demands; and (2) participated in the case from its inception, including serving as Named Plaintiffs on the class action complaint, responding to requests for information and documents, remaining in regular contact with Class Counsel throughout the case, attending the in-person mediation preparation session,

and attending in-person Judicial Settlement Conference sessions. Garvan Decl. ¶ 7.

### E. The Court Reserves Jurisdiction Over Settlement Administration.

Under the terms of the Settlement Agreement and the powers of the Court, the parties request that the Court's final approval order include a declaration reserving its jurisdiction over the construction, interpretation, implementation, and enforcement of the Settlement Agreement and Release, including administration and distribution of payment thereunder.

## III. Conclusion

For all of these reasons, the parties respectfully ask the Court to grant final certification of the Action as a class action for settlement purposes; finally approve the Settlement Agreement; dismiss the Action with prejudice; and retain jurisdiction over the construction, interpretation, implementation, and enforcement of the Settlement Agreement and Release, including administration and distribution of payment.

Date: 07/29/2020

Respectfully submitted,

/s/ *Carol J. Garva*n
Carol J. Garvan

/s/ *David G. Webbert*
David G. Webbert
Johnson, Webbert & Young, LLP
160 Capitol St., Suite 3
Augusta, ME 04330
Telephone: (207) 623-5110
Email: cgarvan@work.law
Email: dwebbert@work.law

*Attorneys for Plaintiffs*

## Certificate of Service

I hereby certify that on July 29, 2020 I electronically filed this document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Carol J. Garvan*
Carol J. Garvan